GILES MORRIS, *Plaintiff in Error,* v. THE STATE OF FLORIDA. *Defendant in Error.*

CRIMINAL LAW—OBTAINING PROPERTY BY FALSE REPRESENTATIONS —MISSPELLING OF NAME IN INDICTMENT—REPRESENTATIONS AS TO OWNERSHIP OF PROPERTY MORTGAGED—VERDICTS.

1. Where there is but a single defendant named in an indictment, whose name, Giles Morris, is correctly and repeatedly given in such indictment, and after being thus correctly and repeatedly given, he is in one place in such indictment referred to as "the said Gules Morris," *Held,*—That such misspelling of the defendant's first name, under these circumstances, is so patently a mere *lapsus pennae,* as to leave no room for doubt as to who was intended to be named, and that it is an immaterial error in such indictment, that does not vitiate it.

2. It is well settled that the crime of obtaining property or money by false representations and practices is not committed by a mere false promise without an accompanying false statement of a past or present existing fact, and that a false statement of such fact may become effective only by being coupled with a false promise; and that when this is the case the statement of fact and the promise may be considered as together constituting the false pretense, and that a conviction may follow.

3. If the statement of fact and the promise can be separated and the prosecutor relied in part on the former, the promise may be disregarded and the defendant be convicted on the false statement of fact.

4. It is well settled that a party who falsely and knowingly represents that he owns property that he mortgages to secure a loan of money obtained upon the faith of such representation can be convicted of the crime of obtaining property by false pretences.

5. While verdicts in criminal cases should be certain, and impart a definite meaning, free from ambiguity, yet any words that convey, beyond a reasonable doubt, the meaning and intention of the jury are sufficient; and all fair intendments should be made to sustain them. If the intention of the jury

is therein clearly manifested, bad spelling or faulty grammar should not vitiate them.

This case was decided by Division B.

Writ of Error to the Circuit Court for Jackson County.

The facts in the case are stated in the opinion of the court.

*Price & Watson,* for plaintiff in error;

*W. H. Ellis,* Attorney General, for the state.

TAYLOR, J.—The plaintiff in error, hereinafter referred to as the defendant, was indicted, tried and convicted in the circuit court of Jackson county of the crime of obtaining money by false representations and practices, and to review the sentence imposed comes here by writ of error. The indictment, omitting its formal parts, charges as follows: "That one Giles Morris on the 8th day of April, A. D. 1905, at and in the county of Jackson and the state of Florida, then and there being, did then and there designedly, by a false pretense and with intent to defraud the Citizens' State Bank of Marianna, Florida, a corporation, obtain from the said bank, and from E. B. Erwin the cashier thereof, fifty dollars good and lawful money, currency of the United States of America, a better and more particular description of which money is to the grand jurors unknown, the said money then and there being of the value of fifty dollars and the property of the said Citizens' State Bank; that is to say, that on said date and in said state and county the said Giles Morris then and there being then and there went to said bank and requested the loan of fifty dollars; that in order to induce the said bank and its

6—Vol. 54

said cashier to let him have said sum the said Giles Morris then and there represented and pretended to the said bank and its said cashier that he was the owner of and in the possession of one dapple gray mare about nine years old called Mary and one bale of long staple cotton, and other personal property and then and there proffered to give the said bank a mortgage on said property to secure the payment of said fifty dollars and the interest thereon on the first day of October, A. D. 1905. That the said bank and its said cashier then and there believed said representations and pretenses to be true and relied upon same, and by reason of said representations and pretences did then and there let the said Giles Morris have the said sum of fifty dollars aforesaid until the first day of October, A. D. 1905, and in order to secure the payment of said sum on said date, together with the interest thereon, then and there received and accepted from the said Giles Morris a chattel mortgage upon the said dapple gray mare and the said bale of long staple cotton which he then and there represented and pretended to own, which said chattel mortgage he the said Giles Morris then and there made and executed and delivered to the said bank and its said cashier to secure the payment of said sum; that thereupon, the said bank and its said cashier paid over and delivered to the said *"Gules"* (italics and quotation marks ours) Morris the said sum of fifty dollars aforesaid and took said chattel mortgage to secure the payment of the same, relying upon and believing the said pretenses aforesaid and believing that the said Giles Morris then and there owned said dapple gray mare and said bale of long cotton and other property which he represented that he owned and had and that the property embraced in said chattel mortgage as security for said debt was *bona fide* property of the defendant Giles Morris; that in truth and in fact the said Giles Morris

did not then and there have or own any such bale of long staple cotton; that the said Giles Morris when, making said false representations and pretenses afore-, said then and there knew that same were false when, he so made them; that as a matter of fact the repre-, sentation and pretense that he owned said dapple gray mare and said bale of long cotton was false when made, that he knew same to be false, when he made same, and that he the said Giles Morris so knowing same to be false did then and there knowingly, wilfully and intentionally make said false representation and pretense with intent then and there to injure and defraud the said Citizens State Bank and the said cashier thereof, contrary to the form of the statute," &c.

The only error urged, or contended for here is the denial by the court of the defendant's motion in arrest of judgment. This motion was made upon the following grounds:

1. The indictment charges no offense against him.

2. It does not appear from the indictment that the bank or E. B. Erwin delivered the said money to the defendant.

3. It does not appear from the indictment that the Citizens State Bank or E. B. Erwin parted with the ownership of the alleged fifty dollars.

4. That it appears from the indictment that the bank and E. B. Erwin relied upon a promise to be performed in the future and not an existing fact or representation of an existing fact.

5. The verdict of the jury is insufficient to support a judgment.

6. The verdict of the jury does not find the defendant guilty of any offense.

7. The purported verdict of the jury is on its face, the verdict of but one juror.

8.   The verdict of the jury is so defective as not to support a judgment.

The first four grounds of this motion challenges the sufficiency of the indictment.   We have examined said indictment with great care, and think that it fully charges the offense; it charges all the ingredients of the offense as laid down in the statute, and with unusual certainty alleges the facts constituting the crime complained of.   The contention that it does not appear from the indictment that the bank or its cashier E. B. Erwin delivered the money alleged to the defendant, or that said bank parted with the ownership of the alleged fifty dollars, is wholly untenable.   The indictment alleges these facts with ample certainty and fulness.   Contention is made here that the indictment is defective because in one place therein the name of the defendant is spelled with the letter "u" instead of with an "i," thus: "Gules Morris" instead of "Giles Morris."   Preceding this misspelling of the name "Giles" is the word "said."   The correct name of the defendant is repeatedly used in the indictment both prior and subsequent to this misspelling of his first name and there is no other mention of any other Morris in the indictment to which the word "said" could have had reference except 'the defendant Giles Morris—so that it is so patent that the use of the letter "u" in the spelling of his first name in this instance was a mere *lapsus pennae,* as to leave no room for anything but a captious and hypercritical doubt that Giles Morris was intended.   It is further contended here that the indictment shows that the bank relied, not upon the alleged representations of the defendant as to his ownership of the property mortgaged to secure the loan made to him by the bank, but upon the defendant's accompanying promise to repay the loan.   The indictment is particularly full and clear in its allegations that the said bank

relied upon and believed such representations as to the ownership by the defendant of the property mortgaged and in consequence thereof and by reason thereof let him have the money. It is well settled that this crime is not committed by a mere false promise without a false statement of a past or present existing fact, and that a false statement of such fact may become effective only by being coupled with a false promise. When this is the case the statement of fact and the promise may be considered as together constituting the false pretense and a conviction may follow, or, if the statement of fact and the promise can be separated and the prosecutor relied in part on the former, the promise may be disregarded and the defendant be convicted on the statement of fact.     19 Cyc. 396 and citations; Holton v. State, 109 Ga. 127, 34 S. E. Rep. 358. It is abundantly well settled that a party who falsely and knowingly represents that he owns property that he mortgages to secure a loan of money obtained upon the faith of such representation can be convicted of the crime of obtaining property by false pretenses. Commonwealth v. Lincoln, 11 Allen (Mass.) 233; Commonwealth v. Lee, 149 Mass. 179, 21 N. E. Rep. 299; Donahoe v. State, 59 Ark. 375, 27 S. W. Rep. 226; Williams v. State, 105 Ga. 606, 31 S. E. Rep. 546; People v. Oscar, 105 Mich. 704, 63, N. W. Rep. 971; People v. Kendall, 25 Ind. 399.

The fifth, sixth, seventh and eighth grounds of the motion in arrest of judgment question the sufficiency of the verdict to support the judgment. It appears from the record that the verdict as first returned into court read as follows: "We the juror find the defendant gutly as charged. T. W. Melvin, Foreman." It is contended here that on its face this was the verdict of but one juror only, and that the attempt at the spelling of the word "guilty" therein was so bad that

it could not be construed to have been intended for the word guilty at all.   The rule is settled here that while verdicts in criminal cases should be certain, and impart a definite meaning, free from ambiguity, yet any words that convey, beyond reasonable doubt, the meaning and intention of the jury are sufficient, and that all fair intendments should be made to sustain them.   If the intention is clearly manifested, bad spelling or faulty grammar should not vitiate them.   Long v. State, 42 Fla. 612, 28 South. Rep. 855; Higginbotham v. State, 42 Fla. 573, 29 South. Rep. 410; Johns v. State, 46 Fla. 153, 35 South. Rep. 71.

The contention made here that the use of the word "juror" in the singular number in this verdict shows that it was the verdict of but a single juror, is untenable.   The word juror was preceded therein by the plural pronoun "we," which, coupled with the fact that it was intended as the act of the collective body. While the collection of letters used in the word "gutly," when standing alone, would require quite a stretch of the imagination to be construed or taken for the word "guilty," yet when found in context with the other words used in this verdict of a jury there is no perceptible room for any doubt as to what idea the jury intended to convey thereby.   We think the verdict as returned was sufficiently certain to found the sentence of conviction upon.   But aside from this, the record shows that before the jury was discharged the clerk read to them a correctly spelled and worded verdict of conviction, upon which the judge made the inquiry of them "So say you all?" to which inquiry each juror answered in the affirmative.   This action certainly cured any deficiency that may, to the super-critical, have existed in the verdict as first returned.

Finding no errors in the record the judgment of the circuit court in said cause is hereby affirmed at the

cost of Jackson county, the plaintiff in error having been adjudged to be insolvent.    ⋆

HOCKER and PARKHILL, JJ., concur;

SHACKLEFORD, C. J., and COCKRELL and WHIT-FIELD, JJ., concur in the opinion.